ALSTON & BIRD LLP
  Charles W. Cox (Cal. Bar No. 162854)
  Kimberly K. Chemerinsky (Cal. Bar No. 277637)
333 South Hope Street, 16th Floor
Los Angeles, California 90071-1410
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100
charles.cox@alston.com
kim.chemerinsky@alston.com

Attorneys for Respondent
Houlihan Lokey Capital, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF QUADRE INVESTMENTS, L.P., FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No.:  2:18-mc-00118-AB (GJSx) |
| | Assigned to Honorable André Birotte Jr. |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER** |
| | Hearing (Per Order dated 9/20/18): |
| | Date:  TBD<br>Time:  TBD<br>Place:  TBD |

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 2

STATEMENT OF FACTS ............................................................................... 3

PROCEDURAL STATUS ............................................................................... 4

ARGUMENT .................................................................................................. 4

I.     THE APPLICATION SHOULD BE DENIED ......................................... 5

       A.     Houlihan Is Not A Party in the Foreign Proceeding. ................. 6

       B.     The Character of The Cayman Proceeding Does Not Support
              Granting The Application. ......................................................... 6

       C.     Petitioner Seeks to Circumvent the Directions Order Issued by The
              Cayman Court. .......................................................................... 7

       D.     The Proposed Discovery Is Unduly Intrusive and Burdensome. ............... 8

II.    EVEN IF THE COURT WERE INCLINED TO GRANT THE
       APPLICATION, IT SHOULD ISSUE A PROTECTIVE ORDER AS
       TO ALL OR MOST OF THE PROPOSED SUBPOENA ...................... 12

       A.     The Court Should Quash Depositions of Houlihan Personnel. .............. 12

       B.     The Document Demands Are Hopelessly Overbroad ........................ 15

       C.     Petitioner Cannot Use Section 1782 To Obtain Unlimited
              Discovery From Houlihan ......................................................... 16

III.   THE COURT SHOULD SHIFT ALL COSTS OF COMPLIANCE
       WITH THE PROPOSED SUBPOENA TO PETITIONER ...................... 17

CONCLUSION ............................................................................................. 18

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### FEDERAL CASES

4

*Apple, Inc. v. Samsung Elec. Co., Ltd.*,

5

   2012 WL 1511901 (N.D. Cal. Jan. 27, 2012)..........................................................14

6

*Ayyash v. Crowe Horwath LLP*,

7

   2018 WL 2976017 (S.D.N.Y. June 13, 2018) ..........................................................11

8

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,

   308 F.3d 1075 (9th Cir. 2002 ....................................................................................5

9

*In re Application of OOO Promnesfstroy for an Order to Conduct*

10

   *Discovery for Use in a Foreign Proceeding*,

11

   2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009)......................................................7, 11

12

*In re Ex Parte Application of Nokia Corp.*,

13

   2013 WL 6073457 (N.D. Cal. Nov. 8, 2013) ......................................................8, 11

14

*In re Ex Parte Application of Qualcomm Inc.*,

15

   162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016)....................................................8, 10

16

*In re Finserve Group Ltd.*,

17

   2011 WL 5024264 (D.S.C. Oct. 20, 2011)................................................................7

18

*In re IBM Peripheral EDP Devices Antitrust Litig.*,

   77 F.R.D. 39 (N.D. Cal. 1977) ................................................................................15

19

*In re IPC De Nordeste, LTDA, For an Order Seeking Discovery Under*

20

   *28 U.S.C. 1782*,

21

   2012 WL 4448886 (E.D. Mich. Sep. 25, 2012) ......................................................9

22

*In re Marano*,

23

   2009 WL 482649 (N.D. Cal. Feb. 25, 2009).........................................................11

24

*In re Pioneer Corp.*,

   2018 WL 2146412 (C.D. Cal. May 9, 2018)............................................................9

25

*Intel Corp. v. Advanced MicroDevices, Inc.*,

26

   542 U.S. 241 (2004)..........................................................................................passim

27

*Legal Voice v. Stormans Inc.*,

28

   738 F.3d 1178 (9th Cir. 2013) ................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER

*Matter of Application of O2CNI Co.*,
   2013 WL 5826730 (N.D. Cal. Oct. 29, 2013) .......................................................... 11

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
   2018 WL 368766 (N.D. Cal. Jan. 11, 2018).............................................................. 8

*Rainsy v. Facebook, Inc.*,
   311 F. Supp. 3d 1101 (N.D. Cal. 2018).................................................................. 11

*Richards v. County of Los Angeles*,
   2017 WL 8222422 (C.D. Cal. July 6, 2017) ............................................................ 2

*U.S. v. McGraw-Hill Companies, Inc.*,
   302 F.R.D. 532 (S.D. Cal. 2014) .......................................................................... 17

*United States v. Global Fishing, Inc.*,
   634 F.3d 557 (9th Cir. 2011) ................................................................................ 5

*Wiwa v. Royal Dutch Petroleum Co.*,
   392 F.3d 812 (5th Cir. 2004) ............................................................................... 15

**FEDERAL STATUTES**

28 U.S.C. § 1782.............................................................................................passim

28 U.S.C. § 1782(a) ....................................................................................... 5, 6

**RULES**

Fed. R .Civ. P. Rule 15(a)(1)(A) ........................................................................... 2

Fed. R .Civ. P. 30(b)(6) ..................................................................................... 13

Fed. R .Civ. P. Rule 45(d)(2)(B)(ii)..................................................................... 17

**TO THE COURT AND TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that pursuant to the Court's September 20, 2018 Order [Doc. 22], Respondent Houlihan Lokey Capital, Inc. ("Houlihan") hereby opposes Petitioner Quadre Investments, L.P.'s Application for an Order Pursuant to 28 U.S.C. § 1782 ("Application") and cross-moves for a protective order as to the discovery sought in the proposed subpoena attached to the Application.

As set forth in the accompanying Memorandum of Points and Authorities, the Application should be denied as Petitioner fails its burden to make the necessary showing under 28 U.S.C. § 1782 for issuance of the proposed subpoena. Alternatively, if for any reason the Application is granted, the Court should (i) issue a protective order to protect Houlihan from undue burden and expense resulting from the proposed subpoena; and (ii) shift the costs of complying with the subpoena to Petitioner pursuant to Fed. R. Civ. P. 45(d)(2)(B)(ii).

Houlihan's opposition and cross-motion will be and are based upon the Court's September 20, 2018 Order and this Notice; the Memorandum of Points and Authorities and Declaration of Charles W. Cox filed concurrently herewith; all files and records in this action; and upon such other and further evidence as may be presented to the Court prior to or at the time of the hearing.

This opposition and cross-motion are made following the conference of counsel pursuant to L.R. 7-3 and the Court's September 20, 2018 Order which took place on September 25, 2018.

DATED:  October 4, 2018                    Respectfully submitted,

                                           ALSTON & BIRD LLP
                                             Charles W. Cox
                                             Kimberly K. Chemerinsky


                                           /s/ Charles W. Cox
                                             Charles W. Cox
                                            Attorneys for Respondent Houlihan Lokey
                                           Capital, Inc.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Court's September 20, 2018 Order (the "September 20 Order") [Doc. 22], Respondent Houlihan Lokey Capital, Inc. ("Houlihan") respectfully opposes Petitioner Quadre Investments, L.P.'s Application for an Order Pursuant to 28 U.S.C. § 1782 and cross-moves for a protective order as to the discovery sought in the proposed subpoena attached to the Application.[1]

### PRELIMINARY STATEMENT

This matter is before the Court in an unusual procedural context.  On September 7, 2018, Petitioner filed an application for discovery pursuant to 28 U.S.C. § 1782 for purported use in an appraisal proceeding pending before the Grand Court of the Cayman Islands (the "Cayman court").  Respondent Houlihan is not a party in that proceeding. Petitioner initiated this extraordinary request six months after the Cayman court held a two-day scope of discovery hearing in which Petitioner never advised the court of the need for discovery from Houlihan and the court did not authorize Petitioner to pursue such discovery either at the hearing or in its subsequent Directions Order (which Petitioner omitted from its application to this Court). None of the thirty-three other dissenting stockholders in the appraisal proceeding joined in the Application.

Against this backdrop, Houlihan submits that Petitioner has failed its burden to make the necessary showing for issuance of the proposed subpoena.  Petitioner does not meet the standard for obtaining the discretionary relief it seeks under 28 U.S.C. § 1782.

---

[1]   On September 28, 2018, Petitioner filed an amended application. [Doc. 23.] While Petitioner is free to abandon its original application, nothing in 28 U.S.C. § 1782 authorizes it to use the prior-filed motion to proceed forward on the amended pleading. Petitioner's suggestion that Rule 15(a)(1)(A) permits otherwise is incorrect: an amended pleading supersedes the prior pleading and moots any motions attendant to the earlier pleading. *See, e.g., Richards v. County of Los Angeles*, 2017 WL 8222422, at *1 (C.D. Cal. July 6, 2017) (denying motion as moot based upon the filing of amended pleading).  The assertion that the Court should just look the other way as the amendment only adds additional applicants is not helpful: Petitioner still does not have support from a majority of the dissenting stockholders, let alone approval of the Cayman court to pursue this discovery. Accordingly, the Court should reject both the original and amended Application.

Even were it otherwise, a protective order should issue as to the discovery sought in the proposed subpoena.  Petitioner has made virtually no effort to minimize the burden and expense on Houlihan from the discovery.  The proposed subpoena seeks information that exists in public filings with the U.S. Securities and Exchange Commission.  It seeks documents already provided in the Cayman proceeding by the appraisal respondent.  It seeks documents for a five-year time period even though Houlihan's engagement in connection with the fairness opinion spanned only 26 days.  The overreach does not end there, however, as Petitioner also seeks unprecedented and unlimited depositions of Houlihan personnel without obtaining prior authorization from the Cayman court.  And through it all, Petitioner seeks to impose on Houlihan the significant costs associated with its overbroad and wholly unnecessary requests.  The Application should be denied on the merits and/or a protective order should be issued to protect Houlihan from undue burden and expense resulting from the proposed subpoena.

## STATEMENT OF FACTS

The facts relevant to this motion are straightforward.  Nord Anglia, Inc. ("Nord") is one of the world's leading operators of premium international schools.  On April 25, 2017, Nord announced that it had entered into an agreement and plan of merger with Bach Finance Limited and certain affiliates, pursuant to which Nord would cease to be a public company.  Heaver-Wren Decl., Exs. 2-3.  On March 31, 2017, Houlihan was retained as a financial advisor to the special committee negotiating the transaction.  *Id.*, Ex. 3, at 58.[2]  On April 25, 2017, Houlihan issued an opinion confirming the fairness of the consideration from a financial point of view to certain non-controlling stockholders as of that date.  *Id.*, Ex. 3, at 65.  On August 21, 2017, 85% of the shares represented at an extraordinary general meeting voted to approve the merger transaction.  *Id.*, Ex. 4, at 266-267.  The transaction closed ten days later.  *Id.*, Ex. 4, at 267.

---

[2]  For the convenience of the Court, we cite to the page numbers referenced in the lower right portion of the declaration of Mr. Heaver-Wren rather than the page numbers of the standalone documents attached as exhibits to his declaration.

Thirty-four stockholders who had objected to the merger then sought appraisal of their shares.  Ex. 4, at 269-272.  On November 9, 2017, an appraisal proceeding was commenced in the Grand Court of the Cayman Islands.  Heaver-Wren Decl., ¶ 16.  On February 26-27, 2018, the Cayman court held a two-day scope of discovery hearing and thereafter issued its Directions Order concerning the scope of permitted discovery in the appraisal proceeding.  Cox Decl., Ex. A.  The Directions Order does not authorize the parties to seek discovery from Houlihan and does not authorize the deposition of any witness.  *Id.*

## PROCEDURAL STATUS

On September 7, 2018, Petitioner filed an Application for an Order Pursuant to 28 U.S.C. § 1782.  [Doc. 1.]  Petitioner sought to have the Application granted on an *ex parte* basis, which Houlihan opposed on jurisdictional, procedural and substantive grounds.  [Doc. 12.]  On September 20, the Court denied the *ex parte* application, directed the parties to meet and confer concerning the Application, and set forth a briefing schedule to address any remaining issues.  [Doc. 22.]  The Court noted that it "has not decided that any discovery is appropriate at this time."  [*Id.*, at 1.]

On September 25, the parties met to discuss the Application and Petitioner's purported need for the discovery sought in the proposed subpoena.  Cox Decl., ¶ 5.  The discussion failed to resolve the impasse over the Application or meaningfully narrow the scope of discovery sought by Petitioner.  *Id.*  As a result, Houlihan submits this opposition to the Application and cross-motion for protective order as to the requested discovery.  For the reasons set forth herein, the Application should be denied and/or the cross-motion for a protective order should be granted.

## ARGUMENT

The Court has directed that the parties brief both the merits of the Application and any modifications that should be made to the proposed subpoena if the Court grants the Application.  [Doc. 22.]  We address the issues sequentially.

1

## I.     THE APPLICATION SHOULD BE DENIED.

In *Intel Corp. v. Advanced MicroDevices, Inc.*, 542 U.S. 241, 264 (2004), the Supreme Court set forth the proper standard for evaluating an application under 28 U.S.C. § 1782. The Court held that an applicant must first establish that: (i) the respondent resides in the district; (ii) the discovery is sought for use in a foreign proceeding; and (iii) the application is being made by the foreign tribunal or an interested party. *Id.*; *see also* 28 U.S.C. § 1782(a).[3]  If those requirements are met, the reviewing court then considers a series of discretionary factors.  *Intel*, 542 U.S. at 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so"); *United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011) ("even if [the § 1782 procedural] requirements are met, a district court still retains the discretion to deny a request.").[4]

In assessing whether to grant that discretion, the Court examines four factors: (i) whether the respondent from whom discovery is sought is "a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions"; and (iv) whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. Here, a careful review of those factors militates against granting the Application.

---

[3]  For purposes of this motion, Respondent does not dispute that these requirements have been satisfied, except to the extent that the overbreadth of the proposed subpoena suggests some ulterior purpose unrelated to use in the appraisal proceeding. We understand that many of the dissenting stockholder's are arbitragers who bought their Nord stock after the merger transaction was announced and may seek to use discovery obtained through a § 1782 petition to initiate future litigation in the United States.

[4]  *See also Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782.").

## A.     Houlihan Is Not A Party in the Foreign Proceeding.

The first *Intel* factor seeks to determine whether the respondent is a participant in the foreign proceeding.   The *Intel* court was concerned about allowing applicants to utilize § 1782 proceedings to obtain discovery from actual *parties* in the foreign proceeding.   *Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence").   Houlihan is not a party in the Cayman appraisal proceeding.   Pet. Mem. at 11.   This factor is neutral.[5]

## B.     The Character of The Cayman Proceeding Does Not Support Granting The Application.

The second *Intel* factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."   *Intel*, 542 U.S. at 264. This factor modestly supports denial of the Application.

Petitioner's discussion of this factor focuses on the theoretical receptivity of Cayman courts to foreign discovery, while only superficially addressing the relationship of the discovery sought in this case to the nature of the proceeding before the foreign tribunal. The Cayman action is an appraisal proceeding.   The sole issue in the case is the determination of the fair value of Nord on August 21, 2017.   Heaver-Wren Decl., ¶ 17.   Any assessment of this *Intel* factor must be evaluated through that prism.

Petitioner concedes the "limited nature of discovery" in Cayman appraisal proceedings and that "there is no automatic discovery" in such proceedings.   Pet. Mem., at 1; Heaver-Wren Decl., ¶ 18.   Petitioner nonetheless leaps to the conclusion that the Cayman court overseeing this proceeding would accept third-party discovery from Houlihan.   In doing so, Petitioner ignores the critical and seminal fact that the Cayman

---

[5]   Petitioner asserts that it cannot obtain discovery directly from Houlihan in the Cayman proceeding. Pet. Mem. at 11.   While true, that is of no moment as § 1782(a) expressly endorses the use of letters rogatory to obtain discovery from third-parties for use in foreign proceedings.

court held a two-day hearing to sort through disagreements between the parties as to the scope of permitted discovery in the action and it did not authorize discovery from Houlihan or depositions of any witnesses.[6]  Cox Decl., Ex. A.  Petitioner fails to identify a single case where the deposition of a financial advisor has ever been admitted into evidence in a Cayman appraisal proceeding, and we are aware of none.  Accordingly, the more reasonable conclusion is that the Cayman court does not view discovery from Houlihan necessary to render a determination of Nord's fair value as of August 21, 2017.[7]  These facts support denial of the Application.

## C.  Petitioner Seeks to Circumvent the Directions Order Issued by The Cayman Court.

The third *Intel* factor examines whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions."  *Intel*, 542 U.S. at 265.  This factor strongly tilts against granting the Application.

As noted above, Petitioner does not have the unfettered right to take third-party discovery in a Cayman appraisal proceeding.  Neither Petitioner nor any of the thirty-three other dissenting stockholders ever mentioned the need for discovery from Houlihan or sought permission to pursue such discovery at the two-day hearing to discuss the scope of permissible discovery and the Directions Order does not authorize such discovery.  Cox Decl., ¶ 5 and Ex. A.  Neither Petitioner nor any of the thirty-three other dissenting stockholders ever mentioned the need for depositions in the case, and we understand that no depositions have been authorized or taken in the case even from

---

[6]  *See In re Application of OOO Promnesfstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608 at *10 (S.D.N.Y. Oct. 15, 2009) ("this Court would not provide 'efficient means of assistance' to litigants by giving parties an incentive, after losing in their original requests for information in the foreign tribunal, to rush to the United States in hopes of obtaining a second bite at the apple.").

[7]  *See In re Finserve Group Ltd.*, 2011 WL 5024264, at *3 (D.S.C. Oct. 20, 2011) ("this Court has been presented with no indication as to the 'receptivity of the foreign government or the court or agency abroad to United States federal court assistance.'").

7

1  Nord officers, members of the special committee or other participants in the transaction.
2  Under these circumstances, it comes with little grace and no legal merit for Petitioner
3  to demand such intrusive discovery from Houlihan. This Court understandably should
4  be skeptical about granting relief requested by a small handful of dissenting
5  stockholders without further guidance or input from the Cayman court.

6     **D.**   **The Proposed Discovery Is Unduly Intrusive and Burdensome.**

7     The fourth *Intel* factor examines whether the discovery sought by Petitioner is
8  "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly
9  intrusive and burdensome where they are not narrowly tailored, request confidential
10  information and appear to be a broad 'fishing expedition' for irrelevant information."
11  *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal.
12  2016). This factor also strongly tilts against granting the relief sought in the Application.

13     ***First***, the requests are not narrowly tailored to the relevant time period.  The
14  relevant valuation date is August 21, 2017.  Houlihan was retained by the Nord special
15  committee on March 31, 2017 and issued its fairness opinion on April 25, 2017.
16  Heaver-Wren Decl., Ex. 3, at 58, 65.  Rather than limit its requests to the period around
17  the relevant valuation date or even the short period covered by Houlihan's engagement,
18  Petitioner has pressed for documents covering a significantly broader time period (five
19  years for Request Nos. 4-6 and 18 months for the balance of the Requests).  This
20  suggests both an ulterior purpose for the discovery and an improper effort to saddle
21  Houlihan with burdensome and unnecessary discovery.  *See MetaLab Design Ltd. v.*
22  *Zozi Int'l, Inc.*, 2018 WL 368766, *4 (N.D. Cal. Jan. 11, 2018) (rejecting § 1782
23  application that was "overbroad temporally and in scope").[8]

24

---

25  [8]   Perhaps recognizing the extent of its overreach, Petitioner has attempted to modify
26  the relevant time period for some of its requests. In doing so, Petitioner continues to
  seek documents prior to Houlihan's retention in connection with the fairness
  opinion. Moreover, Petitioner's "position overlooks its burden to come to the court
27  with narrowly-tailored request in the first instance." *In re Ex Parte Application of*
  *Nokia Corp.*, 2013 WL 6073457, at *3-4 (N.D. Cal. Nov. 8, 2013) (denying § 1782
28  application).

***Second***, the requests are not narrowly tailored to exclude information that is more easily obtainable from parties in the appraisal proceeding. "The Court is reluctant to subject a third party to the burden of searching for and producing documents that appear to be more logically in the possession of a party." *In re Pioneer Corp.*, 2018 WL 2146412 (C.D. Cal. May 9, 2018) (M.J. Segal) (denying § 1782 application).[9]   That is precisely the case here.

- ■ ***Fairness Opinion*** – Petitioner first seeks documents concerning Houlihan's fairness opinion. Request No. 1.  Nord's SEC submissions contain extensive information concerning that issue.  *See* Heaver-Wren Decl., Ex. 3, at 245-248. Nord even included a copy of the fairness opinion in its SEC filings, disclosing the nature of Houlihan's engagement, the information it reviewed, the assumptions underlying the opinion, and the firm's relationship with various parties.  *Id.*  Nord also provided detailed information concerning the selected companies and discounted cash flow analyses performed by Houlihan in connection with its opinion, including the identities of the companies used in the analysis, the enterprise to adjusted EBITDA ratios over three time periods for the eleven companies used in the analysis, the perpetuity growth and discount rates used in the discounted cash flow analysis, and other detailed information relevant to the opinion.  *Id.*, Ex. 3, at 78-84.  Nord also produced its communications to and from Houlihan.  Cox Decl., Ex. A, at Appendix 4.[10]

---

[9]    *See* also *In re IPC De Nordeste, LTDA, For an Order Seeking Discovery Under 28 U.S.C. 1782*, 2012 WL 4448886, *9 (E.D. Mich. Sep. 25, 2012) (granting motion to quash § 1782 subpoena after concluding that "all of the evidence sought is available from a more convenient and less burdensome source.").

[10]   The 30,000 documents produced by Nord include "communications and documents provided to or obtained from Houlihan Lokey Capital, Inc. or its affiliates (the Financial Advisers) in relation to the fair value opinion, including those passing between the Financial Advisers and-communications and documents provided to or obtained from Houlihan Lokey Capital, Inc. or its affiliates (the Financial Advisers) in relation to the fair value opinion, including those passing between the Financial Advisers and: [i] the independent directors or Special Committee of the Company; [ii] the Company's other directors, management, employees, counsel or advisors; and [iii] the Buyer Group." *Id.*

Petitioner has the information it reasonably needs concerning Houlihan's fairness opinion.

- *Merger* – Petitioner also seeks extensive documents concerning Nord's business and the merger transaction, including documents pertaining to the merger, strategic alternatives, acquisition offers, merger conditions, company projections[11], and the "potential business, strategic and financial effect" of legislation in China.   Request Nos. 2, 5-10 and 12-13.   Petitioner fails to explain why this information is not already encompassed within the 30,000 documents produced by Nord[12] or fairly disclosed in the information about the company and transaction included in the company's SEC filings (*see, e.g.*, Heaver-Wren Decl., Ex. 3.).   Instead, Petitioner seeks to foist upon Houlihan the burden of responding to overbroad requests for documents that are more easily obtainable from parties in the proceeding.   *See Qualcomm*, 162 F. Supp. 3d at 1044-45 (denying § 1782 application and finding that the requests were not narrowly tailored because they "include documents that [applicant] should already have or that were served by other parties").

- *Buyer's Group Communications* – Petitioner also seeks documents and communications exchanged with the Buyer Group.   Request No. 3.   Following the merger, the Buyer Group succeeded to the business of Nord. Petitioner offers no insight why it does not have the requested information, let alone why it is relevant to the valuation of Nord as of August 21, 2017.

---

[11]   Petitioner carelessly implies that Houlihan prepared the projections used in the fairness opinion.   Pet. Mem. at 12.   In fact, Nord disclosed in its SEC filings that "the Company management, at the direction of the Special Committee, furnished to Houlihan Lokey a set of five-year financial projections for use in Houlihan Lokey's financial analysis." Heaver-Wren Decl., Ex. 3, at 59. Houlihan also noted: "At [Nord's] direction, we have assumed that the Projections provide a reasonable basis on which to evaluate the Company and the Transaction and we have, at your direction, used and relied upon the Projections for purposes of our analyses and this Opinion." *Id.*, at 246.

[12]   Rather than detail the extensive set of information that Nord has produced, we refer the Court to the Directions Order.   *See* Cox Decl., Ex. A, at Appendix 4.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER

*Third*, the requests are not narrowly tailored to the limited scope relevant in the Cayman appraisal proceeding: the value of Nord on August 21, 2017. Indeed, the stunning and unapologetic overbreadth of the requests suggests that Petitioner may be fronting this § 1782 petition to conduct a broad fishing expedition or for some other purpose. *See Matter of Application of O2CNI Co.*, 2013 WL 5826730 at *2-4 n. 3-4, 16 (N.D. Cal. Oct. 29, 2013) ("The court may consider whether the section 1782 request is a 'fishing expedition' or a vehicle for harassment"); *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017 (S.D.N.Y. June 13, 2018) (denying § 1782 petition and noting that "the Court is concerned that Ayyash is using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against Respondents."). "That Applicant has not limited the topic of communications is emblematic of the burden of the subpoena." *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1113-14 (N.D. Cal. 2018).[13]

In sum, whether taken individually or collectively, the requests are unduly intrusive and burdensome. In addition, as discussed more fully below, the subpoena seeks unnecessary and unauthorized deposition testimony on broad topics that do not target the narrow issue of value on a particular date (August 21, 2017). As a result, "[b]ecause [the] subpoena application is not narrowly tailored, and appears highly intrusive as well as unduly burdensome, this factor weighs strongly against [applicant's] request." *Nokia*, 2013 WL 6073457 at *4.

\* \* \* \* \*

As the foregoing demonstrates, three of the four *Intel* factors counsel against granting the Application and the other is neutral. Given this dynamic, and the tremendous burden attendant to the discovery, the Application should be denied.

---

[13] *See* also *In re Marano*, 2009 WL 482649, at *3 (N.D. Cal. Feb. 25, 2009) (denying § 1782 application after finding that applicant "has not demonstrated that the burdensome discovery . . . is relevant to the British divorce proceeding"); *In re an order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2017 WL 3708028, at *4-5 (D.D.C. Aug. 18, 2017) ("The fourth factor is the salient one . . . . In contrast to the thin relevance of the requested discovery, the burden it would impose on the respondents is substantial.").

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER

## II.   EVEN IF THE COURT WERE INCLINED TO GRANT THE APPLICATION, IT SHOULD ISSUE A PROTECTIVE ORDER AS TO ALL OR MOST OF THE PROPOSED SUBPOENA.

Houlihan submits that Petitioner's failure to meet its statutory burden on the Application bars it from obtaining the discovery sought in the proposed subpoena. Without prejudging that issue, and in order to avoid another round of motion practice if a subpoena issues, the Court requested that Houlihan also address the appropriateness of issuing a protective order to quash or modify the terms of the proposed subpoena if the Court decides to grant the Application. [Doc. 22.] Houlihan respectfully submits that fundamental fairness requires that any subpoena issued in connection with this Application be narrowly tailored and sharply curtailed to minimize the burden and expense to the responding third party.

### A.   The Court Should Quash Depositions of Houlihan Personnel.

The Court should first deny Petitioner's request for depositions of Houlihan personnel. At the meet and confer ordered by the Court, Petitioner's counsel suggested that since such depositions might be permitted in a Delaware appraisal proceeding, then, *a fortiori*, they should be allowed to be taken in the pending Cayman appraisal proceeding. That position is misplaced.

*First*, as noted above, depositions have not been authorized by the Cayman court, nor have they been taken in the appraisal proceeding – not from Nord's officers, not from the Nord special committee, not from the Buyer Group, not from anyone. The introduction of foreign deposition testimony generally requires permission from the Cayman court, for which there is no evidence that it has ever been obtained. *See* Meeson Decl., ¶ 47 (citing *Lyxor* case holding that "no transcript of depositions would be admissible as evidence at trial without an order of the Grand Court"). It is not accidental that Petitioner cannot point to a single Cayman appraisal case where deposition testimony from a third-party rendering a fairness opinion has ever been admitted into evidence. Authorizing depositions of Houlihan now without further guidance from the Cayman court is unwise and unnecessary.

*Second*, if Petitioner, or anyone else, thought that a deposition from a Houlihan representative was necessary or appropriate, they should have brought that issue to the attention of the Cayman court at the scope of discovery hearing.  They did not – and this Court should not fuel Petitioner's attempt to end run the Directions Order and burden Houlihan with expensive and unauthorized depositions.[14]

*Third*, the proposed deposition topics are neither defined with particularity, nor narrowly tailored to the sole issue in the case: the value of Nord as of August 21, 2017. *See* Fed. R .Civ. P. 30(b)(6) (subpoena must describe "with reasonable particularity the matters on which examination is requested.").

- ▪ Topic 1 requests that Houlihan provide testimony on all documents produced in response to the proposed subpoena and the methods by which they were identified, collected and reviewed for production.  Leaving aside that the topic has nothing to do with the value of Nord on August 21, 2017 and may trigger issues of privilege and/or work product, it simply is not appropriate to ask a corporate designee to provide testimony on every document produced in response to a subpoena.  That is even more so here where Petitioner seeks to burden Houlihan for an incredibly large and burdensome production set.

- ▪ Topic 2 requests that Houlihan provide testimony on its "analysis and review of any financial projections or plans" concerning Nord.  In proposing this topic, Petitioner highlights its fundamental misunderstanding of the source of projections used by Houlihan in connection with the rendering of its fairness opinion. As discussed above, Nord disclosed in its SEC filings both its projections and that "the Company management, at the direction of the Special Committee, furnished to Houlihan Lokey a set of five-year financial projections for use in Houlihan Lokey's financial analysis."  Heaver-Wren

---

[14]  Assuming one day to prepare a witness and one day for the actual deposition, the cost of this unnecessary burden could easily approach $15,000 per witness. Cox Decl., ¶ 6.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER

Decl., Ex. 3, at 59, 75-77.  As is typical in a merger transaction, Houlihan "assumed that the Projections provide a reasonable basis on which to evaluate the Company and the Transaction and we have, at [Nord's] direction, used and relied upon the Projections for purposes of our analyses and this Opinion." *Id.*, at 246. Houlihan is not the appropriate party to address questions or quarrels that Petitioner has with Nord's projections.

- Topic 3 requests that Houlihan provide testimony on its "preparation of any valuation reports, fairness or solvency opinions, appraisals, analyses, reviews or other documents concerning the market value, book value or fair value of the COMPANY, its stock, and/or any of the COMPANY's assets or businesses, including any assumptions underlying all analyses, opinions, or projections concerning the COMPANY, including but not limited to the FAIRNESS OPINION."  The topic is hopelessly overbroad and fails to provide sufficient particularity as to the requested testimony.  *See Apple, Inc. v. Samsung Elec. Co., Ltd.*, 2012 WL 1511901 (N.D. Cal. Jan. 27, 2012) (purpose served by Rule 30(b)(6) "does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation").  The topic is not limited temporally or even remotely to the twenty-six day period in which Houlihan performed its fairness opinion engagement.  It also appears to seek expert testimony for which the firm has not been designated or compensated.  And the endless reach of the topic suggests that Petitioner simply intends to use the topic as a catch-all topic to ask any question it wants of Houlihan deponents. The topic is not proportional, necessary or appropriate to ascertain the basis for Houlihan's fairness opinion (*see*, *supra*, at p. 8).

For any and all of these reasons, the Court should issue a protective order barring Petitioner from taking the proposed depositions of Houlihan witnesses.

## B.     The Document Demands Are Hopelessly Overbroad.

As discussed above, the document requests included in the proposed subpoena are hopelessly overbroad and disproportional to the needs of the Cayman appraisal case. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad").  The requests are not limited temporally to the period that Houlihan was engaged to render a fairness opinion in connection with the merger transaction.  They are not bounded by any nexus to the single issue in the case: the determination of Nord's fair value as of August 21, 2017.  The requests are not even limited to use in the Cayman proceeding, nor has Petitioner provided a confidentiality order to prevent their disclosure and/or use in other actions.

Instead, as discussed above, the requests indiscriminately seek broad categories of documents without any attempt by Petitioner to narrow and refine the requests to the specific valuation issues it challenges in the appraisal proceeding. *See In re IBM Peripheral EDP Devices Antitrust Litig.*, 77 F.R.D. 39, 41–42 (N.D. Cal. 1977) ("instead of using rod and reel, or even a reasonably sized net, [propounding party] would drain the pond and collect the fish from the bottom. This exercise goes beyond the bounds set by the discovery rules.").  Petitioner's insensitivity to the burden it seeks to impose is further evidenced by the fact that the proposed subpoena would require Houlihan to review 2.3 GB of electronic data, thousands of emails and extensive hard copy files.[15]  Cox Decl., ¶ 6.  That is an unfair, unnecessary and undue burden to impose on Houlihan (and far more than Nord was asked to produced).[16]

---

[15]  While the number of pages per gigabyte varies depending on the type of file and the assumptions made concerning the length of each document, publicly available thumb rules provide a reasonable estimate of the page volume per gigabyte: (i) word documents (65,000 pages per gigabyte); (ii) email (100,000 pages per gigabyte); (iii) excel spreadsheets (165,000 pages per gigabyte); and (iv) PowerPoints (17,000 pages per gigabyte).

[16]  Despite a purported willingness to provide ESI search terms, as of the date of this filing, Petitioner has not done so.  If Houlihan receives that information before filing its reply memorandum, it will update and refine its estimate of the financial burden attendant to the subpoena.

The balance between Petitioner's purported need for third-party discovery and Houlihan's right to be free from overbroad and ill-defined requests must also take into account the extensive information that already has been made available in the Cayman proceeding.  Nord has produced detailed financial and market information concerning virtually every aspect of Nord's business.  Cox Decl., Ex. A, at Appendix 4.  It has produced information concerning the transaction details and negotiations.  *Id*.  Nord has produced communications to and from Houlihan and other major participants in the merger transaction.  At some point, the issue is not a lack of information, but rather a party's insatiable appetite for information, no matter how tenuous or tangential to the issues in the case.  The 30,000 documents produced so far in a limited judicial proceeding suggests that the parties are rapidly nearing that point.

Houlihan, a third-party, should not be forced to bear the burden and expense of Petitioner's bloated discovery requests, particularly when those requests were not authorized by the Cayman court.  Absent further guidance from the Cayman court or a sharp narrowing by Petitioner of the information that it seeks and how that information relates to the narrow issue in the case, a protective order should issue as to the document requests attached to the proposed subpoena.

## C.   Petitioner Cannot Use Section 1782 To Obtain Unlimited Discovery From Houlihan.

A protective order also is necessary to prevent the tremendous overreach sought by Petitioner in its proposed order.  In addition to unprecedented depositions and overbroad document requests, Petitioner also asks for blanket authorization to pursue endless future fishing expeditions of Houlihan and its employees. *See* Proposed Order, at ¶ 3 ("Petitioner is further authorized to issue and serve such additional follow-up subpoenas on Respondent or their employees as may be necessary to obtain the documentary and testimonial evidence for use in the foreign proceedings, as described in this Application.").  This extraordinary request to trample the rights of Houlihan and obtain a second (and third, fourth, *etc*.) bite at the apple without prior judicial

authorization is found nowhere in Section 1782, and constitutes a clear overreach by Petitioner.  This provision should be stricken from any Order issued by the Court.

### III.   THE COURT SHOULD SHIFT ALL COSTS OF COMPLIANCE WITH THE PROPOSED SUBPOENA TO PETITIONER.

If for any reason the Court is inclined to grant any portion of the relief sought in the Application (with or without modifications to the time, scope or form of discovery), then it should also shift to Petitioner the costs incurred by Houlihan in complying with those requests.  Rule 45(d)(2)(B)(ii)  applies to fee-shifting in the context of a Section 1782 application and "requires the district court to shift a non-party's cost of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *see also In re Michael Wilson & Partners, Ltd. Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782*, 2013 WL 1406009, 520 Fed. Appx. 736, 741 (10th Cir. 2013) (court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.").  As one Ninth Circuit district court recently explained:

> Someone must pay the costs of production - the issue is whether these costs should fall on a party in the suit or a non-party who is powerless to control the scope of discovery. The Ninth Circuit has clarified that the former bears the burden, to the extent the expenses are significant.

*U.S. v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 535-536 (S.D. Cal. 2014).

Here, Houlihan already has incurred substantial fees responding to Petitioner's request for overbroad and burdensome discovery, and those costs will escalate significantly unless the subpoena is quashed or sharply modified. Cox Decl., ¶ 6 (perhaps greater than $200,000).  Houlihan should not be forced to incur that financial burden, particularly when Petitioner never advised the Cayman court of the need for this discovery when it had every opportunity to do so and made no effort to narrow the scope of the requested discovery to the specific valuation issues that it has placed in issue.  Houlihan's fees and costs in responding to the Application and any subpoena issued in connection therewith should be paid by Petitioner.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the Application should be denied and/or a protective order issued as to the discovery sought therein.

DATED:  October 4, 2018                    Respectfully submitted,

ALSTON & BIRD LLP
  Charles W. Cox
  Kimberly K. Chemerinsky


/s/ Charles W. Cox
          Charles W. Cox
 Attorneys for Respondent Houlihan Lokey
Capital, Inc.